**In the United States District Court of Massachusetts At Boston**
**John Moakley Courtroom**
1 Courthouse Way, #2300
Boston, MA 02210

| | |
|---|---|
| AMANDA UCHE AJULUCHUKU,<br><br>Plaintiff,<br>Vs.<br><br>UNIVERSITY OF MASSACHUSETTS<br>Defendant. | NO. C.A. No. 04-12473-DPW<br><br>**ANSWER TO YOUR RESPONSE** |

To the Clerk of the Court

**OFFICE OF THE CLERK**

Amanda U. Ajuluchuku
P.O. Box 534
Seattle, WA 98111
Phone (206) 228-8852

December 11, 2004

Honorable Douglas P. Woodlock
United States District Judge
I courthouse Way, Room 2300
Boston, MA 02210

Dear Judge Douglas Woodlock:

    I received your letter. I would like to thank you for granting my fee waiver. I would also like to respond to your letter. The above-captioned case should be filed under other civil rights because University of Massachusetts violated the civil rights of disabled person when they threatened me with the Police, breached our housing contract, changed the lock, and refused to award me financial aid. I have taken the liberty to enclose documents pertaining to my allegations. This case was mistakenly filed under medical malpractice. The clerk's office did not understand my writing. I checked both

the federal question box and other personal injury. It should be filed as other civil rights, contract, and other personal injury. The American Disability Act 12101 et seq. covers all three. I have taken the liberty to enclose documents pertaining to the above-captioned case for your review. I will also be enclosing TWO cases (Bank of America and UHAUL of Mass-Amended Complaint) in this envelope. They should of course be handled by the Pro Se clerk, Susan Jenness and clerk respectively.

Thank you, Your Honor, I look forward to hearing from you about the issuance of the summons.

## COMPLAINT
### Discrimination based upon disability, including breach of contract and personal injury.
#### A). FACTS OF THE CASE (ALLEGATIONS)

1). On June 20, 2003, a day before my birthday (June 21), I signed a housing contract with University of Massachusetts Dartmouth. My son, Justus Jason Ajuluchuku (17 years old) also had a housing contract with University of Massachusetts. Due to discriminatory practices in Maryland, he was prevented from traveling with me to Massachusetts.

2). My son and I reserved two dorm rooms with Jennifer Letendre, the resident director. My son and I were scheduled to attend summer school at University of Massachusetts Dartmouth and Southern New England School of Law in North Dartmouth. After summer school, we were hoping to proceed to the Fall 2003 semester in both University of Massachusetts Dartmouth and Southern New England School of Law in North Dartmouth. Southern New England School of Law house their first year law students at University of Massachusetts. Before arriving in Massachusetts, I completed the Financial Aid package. I sent my 1040 tax returns to the school. My son and I were given two dorm rooms at University of Massachusetts.

3). I attended the summer school (Torts) from June 2003 through July 2003. However, I was not accepted into the law school for Fall 2003. Dean Robert Ward, Jr. cited my low LSAT score. He urged me to reapply the following year. When I found out that Morgan State University had deliberately sent my son's transcript of four Fs and one D to Law School Admissions Council (LSAC) in June 2003, I tried to contest my October 2002 LSAT results, LSAC declined. They explained that I had not met the sixty days' deadline. I sat for the October 2002 LSAT in Maryland at University of Maryland Baltimore County (UMBC).

4). I capitalized on the fact that I was already at University of Massachusetts Dartmouth. I applied to their MBA/Graduate Certificate of Management. I was accepted. Again, I completed the financial aid with University of Massachusetts Dartmouth. Fortunately, the Graduate Certificate of Management/MBA proved to be less expensive than the law school. As a graduate student, I was entitled to receive $18,500.00 a year since I was not working. Tuition, room and board for the entire year at University of Massachusetts Dartmouth was less than $12,000.00. The Financial Aid Office told me when I turned in my 2002 1040 tax return that I would
receive the difference (more than $3,250.00 a semester or $6,500.00 for the two semesters) in October 2003 and February 2004) for living expenses. I received my financial aid within a month when I was a graduate student at National University

AMANDA U. AJULUCHUKU
P.O. BOX 534
SEATTLE, WA 98111
AMANDAAJULUCHUKU@YAHOO.COM

in California from 1994 through 1995 via Citibank. National University was aware of my disability. They complied with the law.

5). <u>When I was a baby, I fell down a flight of stairs. I injured my brain in the process. As a consequence, I lack motor skills. Playing the piano at age six rewired my brain and accorded me minimal motor skills. I have recurring short-term memory loss, dizziness, cold chills, fainting spells, and headaches.</u>

6).    I received headaches, stress, and injuries from both William Mitchell, Associate Vice Chancellor of Finance and John Wichser, Director of Housing and Residential Life. They put me through hell. I told them about my disability. But they denied me access to financial aid. They summoned me at a moment's notice to their offices. Sometimes, they were not present. They made a career of leaving messages on my dorm telephone number and dorm rooms. It did not matter if it were midnight. They slipped stuffed envelopes through the door of my dorm room. They threatened me with eviction, police, lockout, and withdrawal from all classes and food.

7).    At one point, William Mitchell summoned me again to his office. He was not present. However, his office was unlocked. There was absolutely nothing in his office. All his furniture and belongings had suddenly vanished. I inquired about him from several people. They were unable to give me an explanation. A few days later, I was summoned again to his office. I found him, his belongings and another colleague in the same office.

8).    I fell several times on my way to their offices. Both men refused to lift a finger to help me. I sought help at the Chancellor's and Provost's Offices. Their assistants told me that they were busy with meetings. William Mitchell added insult to injury. He promised that I would not succeed with either the Chancellor or the Provost because his decision was final.

9).    On October 16, 2003, William Mitchell vowed that he would withdraw me from all my classes (Financial Accounting and Marketing) and cancel my meal plan if I did not leave or come with the money by October 31, 2003. I immediately went to his office to tell him about the financial aid in place. I also told him that my father had died on October 7, 2003. I told him that I was in mourning. He did not offer any condolences. Instead, he threatened me with the Police. I gave him proof of my citizenship. I had applied for a passport. The passport office had not issued it. I was an A student in both classes. Both of my professors, Dr. Frederick Jones and Dr. Steven White pleaded with William Mitchell to allow me to finish the semester. But his refusal was adamant, extreme, and ironclad.

10.    William Mitchell was unstoppable. In November 2003, he canceled my meal plan. I was deprived of food for many weeks. Not to mention that I was also penniless. He still refused to grant me financial aid.

11.    In November or December 2003, both William Mitchell and John Wischler changed the lock on my dorm room. Consequently, I became homeless. Again, I was threatened with Police. Both men breached my contract with University of Massachusetts.

12).    I took refuge in South Station, Logan International Airport, and some hotels in Boston. Boston has good public transportation as opposed to North Dartmouth. I registered with Accounting agencies. I volunteered at Special Olympics International in

AMANDA U. AJULUCHUKU
P.O. BOX 534
SEATTLE, WA 98111
AMANDAAJULUCHUKU@YAHOO.COM

Brockton, Massachusetts. However, I became very sick due to my homelessness. Boston is a very cold city. I threw up at Logan International Airport and South Station. My blood pressure rose to alarming heights.

13). In December 2003, I met my fiancé in Boston. He was born and raised in Boston. He took a leave from his Department of Defense to visit his ailing mother.

He fell madly in love with me. On January 1, 2004, he proposed marriage. On January 7, 2004, he flew me from Boston to Washington for marriage on a one-way ticket (ATA)

### C). DISCRIMINATION

1). According to Black Law's Dictionary, edited by Byran A. Garner, Discrimination is the effect of a law or established practice that confers privileges on a certain class or denies privileges to a certain class because of race, age, sex, nationality, religion or handicap. State laws provide further protection against protection. Differential treatment especially a failure to treat all persons equally when no reasonable distinction can be found between the favored and those not favored. Invidious discrimination is based upon prejudice or stereotyping.

2). University of Massachusetts Dartmouth preyed upon my disability. They breached or housing contract. They changed the locks. They threatened me with the Police. They refused to award me financial aid.

### D). DISABILITY

1). "Physical disability is an incapacity caused by a physical defect, bodily imperfect or mental weakness." "An individual with a disability is defined by the ADA as a person who has a physical or mental impairment that substantially limits one or more major life activities, a person who has a history of record of such an impairment, or a person who is perceived by others as having such an impairment. The ADA does not specifically name all of the impairments that are covered.

2). When I was a baby, I fell down a flight of stairs. I injured my brain in the process. As a consequence, I lack motor skills. Playing the piano at the age of six rewired my brain and accorded me minimal motor skills. Dizziness and fainting spells are symptoms of my disability. I have a record of disability with Dr. Mark Schwartz.

### E). LIABILITY

1). According to the American Disability Act 12101 et seq., I am entitled to relief. All my life, I have battled dizziness. Some days are good. Other days are bad. I suffered emotional distress due to the fact that University of Massachusetts breached our housing contract, changed the lock, threatened me with the Police, and refused to award me financial aid.

2). According to the Civil Rights Act 1964 under 42 U.S.C. 2000, University of Massachusetts violated my civil rights when they changed the lock and breached our contract.

### F). MENTAL OR EMOTIONAL DISTRESS

1). "Mental or emotional distress is a highly mental unpleasant mental reaction such as anguish, grief, fright, humiliation, dizziness, fainting spells, memory loss, embarrassment, anger, chagrin, worry, disappointment, or fury that results from another person's conduct. Again, I am quoting from Black Law's Dictionary. Mental distress constitutes emotion pain and suffering. "When mental distress is extreme, there is liability."

AMANDA U. AJULUCHUKU
P.O. BOX 534
SEATTLE, WA 98111
AMANDAAJULUCHUKU@YAHOO.COM

2). <u>I suffered panic attacks, anxiety, high blood pressure, memory loss, dizziness, anger, frustrations, furor, disappointments, falls, and fainting spells at University of Massachusetts Dartmouth.</u>

### G). PRAYER FOR RELIEF

I would like the court to do something. Please do not condone the discriminatory practices of William Mitchell and John Wischler. Both men are not black. They intentionally discriminated against me. They violated laws, as well as breaching our contract. I became homeless and penniless. I was entitled to financial aid. I am an American citizen. "America is a free country for all" (President Jefferson, 1776). "I hope that someday, everyone will be judged by the content of their character and not by the color of their skin" (Dr. Martin Luther King, Jr., 1968). According to the Civil Rights Act 1964, University of Massachusetts Dartmouth is liable. Both men should face disciplinary action for their misconduct, misdoing, and misbehavior.

I suffered extreme emotional distress at the hands of William Mitchell and John Wischler. My personal injuries include headaches, stomachaches, ulcers, vomiting, dizziness, short-term memory loss, falls, humiliation, embarrassment, anger, fury, anxiety, disappointment, high blood pressure, and cold chills. According to the American Disability Act 12101 et seq., no disabled person shall be denied access to financial aid. Therefore, University of Massachusetts Dartmouth is liable. As a disabled person, I also have a voice. I pray that my voice will be heard today. I have been singled out for a reason. I would like to think it is because I have the capacity to speak on behalf of all disabled persons. Hundred years from now, I pray that America would lead the world in shaping the minds of wrongdoers. We as a nation have the capability to rise above evil, stereotypes, and hate crimes. In doing so, we have come to do what God has put US on earth to do. Honesty is the best policy. I have told the truth. I know that when I leave this earth, my conscience will be clear. Please remember "America is a free country for all" (President Jefferson, 1776). "I have a dream that one day everyone will be judged by the content of their character and not by the color of their skin" (Dr.... Martin Luther King Jr. 1968).

Finally, I would like the court to order University of Massachusetts to send my transcript to LSAC and I. I was a straight A student. However, William Mitchell hated the fact that I was performing above par in my two graduate classes. Both Drs. Jones and White recommended me for law school. Their letters of recommendation are registered with LSAC.

Your Honor, granting me $1,000,000,000.00 (one billion dollars) for compensatory and punitive damages is a matter of law.

Amanda U. Ajuluchuku (Pro Se)

Encl.   Housing Contract
        Acceptance letter
        University of Massachusetts ID
        Letter from William Mitchell and John Wishcler

AMANDA U. AJULUCHUKU
P.O. BOX 534
SEATTLE, WA 98111
AMANDAAJULUCHUKU@YAHOO.COM



| University of Massachusetts Dartmouth | Academic Affairs/ Graduate Studies | 285 Old Westport Road North Dartmouth Massachusetts 02747-2300 | 508 999-8025 (voice) 508 999-8183 (fax) |

September 3, 2003

Amanda U. Ajuluchuku
P. O. Box 70313
North Dartmouth, Massachusetts   02747

Dear Ms. Ajuluchuku:

I am very pleased to inform you of your admission to the Management Certificate program leading to the Post Baccalaureate Certificate degree at the University of Massachusetts Dartmouth. Your acceptance is for the Fall semester 2003; classes will begin on September 01, 2003.

The Chancellor, Provost, deans, faculty, and students join me in congratulating you for possessing the personal and academic qualities that enabled you to gain admission to a UMass Dartmouth graduate program. We welcome you to the challenging academic environment that characterizes our university.

The following items will be of concern to you as you prepare to begin your studies with us.

- Please use your UMass Dartmouth identification number, 00227150, whenever you contact us.

- We need you to confirm that you plan to enroll or otherwise to tell us your intentions. Enclosed with this letter is a Confirmation Card that gives instructions for this process. You can register for classes only after you notify us that you intend to enroll.

- Also enclosed is a Health Form, which you must complete and return at your earliest convenience.

- If you are currently in a degree program that is prerequisite to ours, you need to send an official transcript notifying us of its successful completion before you start your first semester of study here.

- As soon as you can after relocating here, please inform our Student Enrollment Services office of your new local address.

- To receive academic advisement and select your courses for your first term, please contact the program representative(s) indicated below.

We look forward to your beginning your graduate studies here at UMass Dartmouth. Please feel free to ask us or the graduate program administrator(s) listed at the end of this letter for help.

Very sincerely,

Richard J. Panofsky, PhD
Associate Vice Chancellor for Academic Affairs and Graduate Studies

cc:   Dr. Omar Khalil
      508 999-8443
      okhalil@umassd.edu





| University of Massachusetts Dartmouth | Office of Housing and Residential Life | 285 Old Westport Road North Dartmouth Massachusetts 02747-2300 | 508 999-8140 |

November 11, 2003

Amanda Ajuluchuku
Cedar Dell Apartments

Re: Checkout

Dear Ms. Ajuluchuku:

As per the letter/email you received from William Mitchell, Associate Vice Chancellor for Finance, on October 16, 2003 you were instructed to leave campus housing by October 31st. I understand you have not yet checked out of the Cedar Apartments.

I understand you needed to make arrangements to relocate to another apartment or other housing facility. In an effort to be supportive of your situation, I am extending your check out date to Saturday, November 15 at 5:00 PM. Should you not comply with this notice or make alternate arrangements with me directly by then, the University Police will be contacted to evict you from the premises and escort you from the campus.

I am requesting your cooperation with this matter. Should you have any questions or need to make alternate arrangements with me, I may be contacted at 508-999-8140 prior to 12:00 PM on Friday, November 14, 2003.

Sincerely,

John Wichser
Director
Housing and Residential Life

cc. William Mitchell
    Shawn Edie
    University Police
    Michael Laliberte
    File



| University of Massachusetts Dartmouth | Office of Housing and Residential Life | 285 Old Westport Road North Dartmouth Massachusetts 02747-2300 | 508 999-8140 |



(508) 287
6338

June 16, 2003

Amanda Ajuluchuau
**542 B**

Dear Amanda:

This letter is to inform you of your room assignment for the second summer session in Cedar Dell. Those of you who will be Cedar Dell West residents will be moving directly into your room for the Fall. Those you who will be living elsewhere have been placed where we have rooms available. Due to the renovations in South and summer conferences in West there is limited space. As a result, there are absolutely **no room changes**.

Your next room assignment is **438 C** effective **Monday, July 7, 2003** and you will be allotted 48-hours to complete your move and properly check out of your room in Cedar Dell South. Please be on the lookout for fliers to remind you of this information. Below is other relevant information for your room:

1-508- 910- 5570

    **Extension x5570**

    **Mailbox # 6221**

    **Mailbox Combo 03 28 40**

I hope this information helps to provide you with a smooth transition throughout this move. Thanks for your time and please enjoy the rest of your summer.

Sincerely,

Jennifer R. Letendre
Resident Director
Cedar Dell West
508.999.8852
jletendre@umassd.edu

