UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMANDA U. AJULUCHUKU,
        Plaintiff,

                                                                                     C.A. No. 04-12473-DPW

        v.

UNIVERSITY OF MASSACHUSETTS,
        Defendant.

FURTHER MEMORANDUM AND ORDER
AND ORDER ENJOINING PLAINTIFF

WOODLOCK, D.J.

For the reasons stated herein, it will be Ordered that this action remains dismissed pursuant to the Memorandum and Order entered on April 27, 2005. It is Further Ordered that Plaintiff Ajuluchuku be enjoined from filing further actions in this Court absent leave of Court.

I.      Background

On November 29, 2004, Plaintiff Amanda Ajuluchuku filed a *pro se* complaint alleging personal injury and discrimination claims based on color and disability, as well as breach of contract, against the University of Massachusetts ("U-Mass"), as a result of the alleged actions of William Mitchell, the Associate Vice Chancellor of Finance and John Wischler, Director of Housing and Residential Life. The underlying dispute stemmed from the denial of financial aid for her schooling, which Plaintiff asserted led to her inability to attend classes, the cancellation of her meal plan for lack of payment, and her eviction from the dormitory. This, in turn, resulted in joblessness, homelessness and aggravated health problems.

On February 4, 2005, Plaintiff made further filings relating to this dispute, which was deemed to be an Amended Complaint, by Order of Chief Judge Young dated March 7, 2005. (See docket #12) The Amended Complaint was found to be substantially identical to the

original Complaint, with a few minor alterations and allegations.

On March 11, 2005, I entered a Memorandum and Order (#14) directing Plaintiff to show cause within thirty-five (35) days of the date of the Memorandum and Order why this action should not be dismissed for the reasons stated therein.

On April 27, 2005, a Memorandum and Order of Dismissal (#15) entered for Plaintiff's failure to show cause and for the reasons set forth in the March 11, 2005 Memorandum and Order. At the time of the entry of the April 27th Memorandum and Order (#15), I had not received the filing of the Plaintiff, dated April 20, 2005 and date-stamped as received by the Clerk's Office on April 25, 2005.

The recent filings of the Plaintiff (dated April 20, 2005) contain 1) a completed Application to Proceed *in forma pauperis*; 2) two new Civil Action Cover Sheets, one dated April 20, 2005 and another dated April 22, 2005; and 3) a copy of the Complaint with a hand-written notation on the first page stating " Motion to Leave this Case" and "Note on Calendar in Worcester May 6, 2005. A.A." Plaintiff also listed her phone number and apartment number. It is also noted that she increased her monetary demand to two trillion dollars ($2,000,000,000.00). No docket numbers are referenced on the filings.

II.     Failure to Show Cause Why This Action Should Not Be Dismissed.

I will treat the pleadings filed on April 25, 2005 to be a response to the show cause Memorandum and Order of March 11, 2005, and not a new civil action. Upon review of these new pleadings and the entire file in this action, I find that Plaintiff has failed to demonstrate sufficient cause why this action should not be dismissed for the reasons set forth in the March 11, 2005 Memorandum and Order. I also find the April 25, 2005 filings to be untimely.

For both reasons, I find no basis to alter the Memorandum and Order of Dismissal entered on April 27, 2005 (#15) based on Plaintiff's recent filings.

Finally, I note that Chief Judge Young's Order of March 2, 2005 entered in this case and in C.A. 04-12585-WGY and C.A. 04-12542-WGY, warned Plaintiff that merely filing revised pleadings (complaints and cover sheets) and new Applications to proceed *in forma pauperis*, would not be deemed to be sufficient show cause responses. The Order further required Plaintiff to provide a statement specifically identifying the purpose of the pleading, and warned Plaintiff that absent such filing, the Court would deem such filing to be made in bad faith. Plaintiff was also warned that failure to comply with the Order could subject her to sanctions, including an Order enjoining her from filing new actions absent leave of Court.

The Plaintiff has ignored Chief Judge Young's Order of March 2, 2005, by her recent filing in this matter (i.e., *in forma pauperis* applications, civil cover sheets, and complaints without any identifying docket reference).

Accordingly, for the reasons stated in the March 11, 2005 Memorandum and Order and this Further Memorandum and Order, and for the failure of Plaintiff to show good cause timely why this action should not be dismissed, it is hereby ORDERED that the Memorandum and Order and Order of Dismissal entered on April 27, 2005 remain in effect.

III.    Injunction as to Future Filings

In addition to the finding that Plaintiff's filings in this action are insufficient and in contravention of Chief Judge Young's directives, I also find Plaintiff to be a repetitive litigant who has abused the judicial resources of this Court by filing frivolous, abusive, or vexatious cases, and conducting such litigation in a sanctionable manner.

Accordingly, for the reasons stated below, Plaintiff Ajuluchuku is hereby enjoined from future filings in this Court absent leave of Court.

### A. Authority To Impose Sanctions

#### 1. Fed. R. Civ. P. 11

Under Rule 11, this Court may impose sanctions on an unrepresented party if he or she submits a pleading for an improper purpose or if the claims within it are frivolous or malicious. See Fed. R. Civ. P. 11(b)(1), (2);[1] Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994); Pronav Charter II, Inc. v. Nolan, 206 F. Supp.2d 46, 54 (D. Mass. 2002) (warning *pro se* party against whom sanctions were sought, albeit unsuccessfully, that Rule 11 applies to *pro se* litigants). One of the central purposes of Rule 11 is to protect parties and the

---

[1] Rule 11 provides in pertinent part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11.

Court from wasteful, frivolous, and harassing lawsuits, and the rule provides for sanctions as a deterrent to such abusive conduct. See Navarro-Ayala v. Nunez, 968 F.2d 1421, 1426 (1st Cir. 1992). "The imposition of a Rule 11 sanction usually serves two main purposes: deterrence and compensation. . . . Encompassed within these objectives are several related subsidiary goals, e.g., punishing litigation abuse and facilitating case management." Id. (internal citations omitted).

The Advisory Committee Notes regarding the 1993 amendments to Rule 11 set forth various factors that properly may be considered in determining whether sanctions under the rule are warranted.[2]

Here, the records of this Court show that Plaintiff Ajuluchuku has repeatedly attempted to bring new civil actions based in large part on the same legal theories (ADA violations) and that these actions have been dismissed for failing to state legally cognizable claims and/or to invoke the subject matter jurisdiction of this Court.[3] I recognize that Plaintiff has not attempted

---

[2] These include: "[1][w]hether the improper conduct was willful, or negligent; [2] whether it was part of a pattern or activity, or an isolated event; [3] whether it infected the entire pleading, or only one particular count or defense; [4] whether the person has engaged in similar conduct in other litigation;"[5] whether it was intended to injure; [6] what effect it had on the litigation process in time or expense; [7] whether the responsible person is trained in the law; [8] what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and [9] what amount is needed to deter similar activity by other litigants. Fed. R. Civ. P. 11 Advisory Committee Notes (1993); Vasile v. Dean Witter Reynolds Inc., 20 F. Supp.2d 465, 506 (E.D.N.Y. 1998), aff'd, 205 F.3d 1327 (2nd Cir. 2000).

[3] On November 29, 2004, Plaintiff filed a complaint Ajuluchuku v. U-Haul, C.A. 04-12542-WGY, concerning a dispute about charges billed to her credit card for storage space rented from U-Haul. She alleged breach of contract, personal injury and discrimination based on disability and seeks $1 billion dollars in damages. That action was dismissed after failing to show cause as directed. On December 3, 2004, Plaintiff filed a related action in which she alleged discrimination based on color and disability, personal injury, slander, libel, and breach of

in those cases to re-assert dismissed claims. Indeed, her claims against Bank of America, U-Haul, and U-Mass have unrelated factual distinctions. However, her repeated assertion of a federal cause of action (i.e., ADA violations), in an attempt to bring her claims in federal court (as opposed to state court), which are so obviously not supported by the factual allegations, cannot be indulged. Plaintiff's attempts to assert damage claims from one billion dollars to two billion dollars, and then increase the claim to two trillion dollars, without any factual or legal bases for the increase, further substantiates the determination that Plaintiff is an abusive litigant.

---

contract, arising out of banking transaction difficulties, and the effect it had on her ability to pay for U-Haul storage. <u>Ajuluchuku v. Bank of America</u>, C.A. 04-12585-WGY. That action also was dismissed after failing to show cause as directed. On April 25, 2005 Plaintiff filed a new civil complaint alleging discrimination arising out of a sexual assault on her by an individual from the Southern New England School of Law. That action has not been assigned a case number as of this writing, nor has it been preliminary screened pursuant to 28 U.S.C. § 1915.

Plaintiff's previous litigation history in this Court includes cases unrelated to these recent cases as follows: On August 4, 2003, plaintiff filed complaints against a Maryland university and several police entities. In <u>Ajuluchuku v. MTA Police-Metro/Marc Bureau</u>, C.A. No. 03-11488-MLW, plaintiff alleges that her son was "brutalized" by a MTA officer in June 2003 and that she fell down on her way to the police station. In <u>Ajuluchuku v. Morgan State University</u>, C.A. No. 03-11518-MLW, Ms. Ajuluchuku alleges that her son was sexually assaulted at her Maryland home and that her son's grades suffered because she reported the alleged assault. In <u>Ajuluchuku v. Internal Affairs-Montgomery Police</u>, C.A. No. 03-11519-MLW, she alleges that her son was assaulted by an unnamed officer in July 2000 and that in May 2001 her son was arrested and that she lost certain valuables. In <u>Ajuluchuku v. Baltimore County Police</u>, C.A. No. 03-11520-MLW, plaintiff alleges that she and her son were "terrorized" by an Anthony Davis, who "brainwashed" her son. She further alleges that an officer of the Baltimore County Police "kidnapped" her son and that her son has been "falsely imprisoned" by Social Services.

On August 21, 2003, plaintiff filed a fifth complaint, <u>Ajuluchuku v. Board of Child Care</u>, C.A. 03-11878-MLW, in which she alleges that her son was arrested in June 2003, that he has been "falsely imprisoned" at a foster home and shelter, and that her son has been "brainwashed" and mistreated at the facility. In October 2003, plaintiff filed a document entitled "Addendum," in which she contends that she has been informed that her son is now staying with Mr. Davis and is being used as "guinea pig."

On December 8, 2003, plaintiff filed <u>Ajuluchuku v. Judge Kathleen Cox</u>, C.A. 03-12557-MLW, a complaint against the Maryland Juvenile Court Judge presiding over proceedings involving her son in that state.

All of these earlier cases have been dismissed.

Also of significance is Plaintiff's repeated pattern of behavior in filing duplicative complaints and applications to proceed *in forma pauperis*, without reference to an existing civil action. These documents appear on the surface to be new original pleadings, and Plaintiff provides no explanation as to the purpose of the filing. Such behavior demonstrates continuation of a deliberate pattern that has resulted in the expenditure of significant time and resources of the Court in processing and docketing the filings. Specifically, great effort is utilized to determine whether the action should be opened as a new civil action and assigned randomly or directly as related cases, to a District Judge, or whether the pleadings relate to a pending case in this Court, and if so, what the appropriate docket entry for the document should be (e.g., amended complaint or response to show cause order). I take into consideration that Plaintiff is not an attorney (although she has alleged she has taken legal courses and therefore may have some legal knowledge). However, her status as a *pro se* litigant cannot entirely immunize her from sanctions.

Serious measures must be taken in order to make clear to the Plaintiff that her repetitive misconduct will be curbed. See Vasile v. Dean Witter Reynolds Inc., 20 F. Supp.2d 465, 506 (E.D.N.Y. 1998), aff'd, 205 F.3d 1327 (2d Cir. 2000) ("a substantial sanction is needed to send [the pro se litigant] a message that this litigation must be set to rest"). Cf. In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 124, 131 (S.D.N.Y. 1999) (holding that "[t]he continued assertion of a factual or legal argument long after that argument has proven to be completely baseless is sanctionable conduct, as is 'the waste of judicial resources and resulting inefficiencies and delays that affect all actual and potential litigants in the federal courts.'") (internal citations omitted); Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988) (in upholding

imposition of monetary sanctions pursuant to Rule 11 against a pro se litigant, noting that such a litigant "'has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets'") (quoting Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986).

    2.  Inherent Powers

In addition to the power to impose sanctions under Rule 11, a district court has the inherent power to manage its own proceedings and to control the conduct of litigants who appear before it through the issuance of orders or the imposition of monetary sanctions for bad faith, vexatious, wanton, or oppressive behavior.  See Chambers v. NASCO, Inc., 501 U.S. 32, 45-50 (1991); accord United States v. Kouri-Perez, 187 F.3d 1, 6-8 (1st Cir. 1999) (same); John's Insulation, Inc. v. L. Addison & Associates, Inc., 156 F.3d 101, 109 (1st Cir. 1998) (finding no abuse of discretion when district court, under inherent powers rather than Rule 41, dismissed complaint and entered default judgment as a sanction for plaintiff's "protracted delay and repeated violation of court orders");  Alexander v. United States, 121 F.3d 312, 315-316 (7th Cir. 1997) (pursuant to court's inherent authority, sanctioning inmate $500 on account of his repetitious, meritless litigation).  A district court has the power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation.  Elbery v. Louison, 201 F.3d 427 (1st Cir. 1999) (per curiam) (citing Cok v. Family Court of Rhode Island, 985 F.2d 32, 34 (1st Cir. 1993) for the proposition that "[f]ederal courts . . . possess discretionary powers to regulate the conduct of abusive litigants" and Castro v. United States, 775 F.2d 399, 408 (1st Cir. 1985) (per curiam) for the power to enjoin a party from filing "frivolous and vexatious lawsuits" pursuant to such authority).

For the reasons previously set forth, I find Plaintiff Ajuluchuku's conduct to be vexatious,[4] and the sanction described below to be warranted not only under Rule 11, but pursuant to this Court's inherent authority as well.

B.   Sanction Imposed -- Order of Enjoinment

The First Circuit offers the following guidance when considering the appropriate sanction to impose:

> In general, a trial court confronted by sanctionable behavior should consider the purpose to be achieved by a given sanction and then craft a sanction adequate to serve that purpose. . . . [T]he judge should take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms. Whether deterrence or compensation is the goal, the punishment should be reasonably suited to the crime.

Anderson v. Beatrice Foods Co., 900 F.2d 388, 395 (1st Cir. 1990). The repeated filings by Plaintiff of factually and legally deficient complaints is an abuse of the processes of this Court for the administration of justice. It is the cessation of this behavior that the court seeks to achieve through the imposition of a sanction and the most effective means of accomplishing this goal is to enjoin Plaintiff from making any additional filings in this court without first obtaining leave of court. See Castro, 775 F.2d at 408 ("[I]n extreme circumstances involving groundless encroachment upon the limited time and resources of the court and other parties, an injunction

---

[4] Vexatious conduct occurs where a party's actions are "frivolous, unreasonable, or without foundation." Local 285 Serv. Employees Int'l v. Nontuck Res. Assoc., Inc., 64 F.3d 735, 737 (1st Cir. 1995) (internal citations omitted); accord Alexander, 121 F.3d 315-16 (sanction appropriate when "objectively unreasonable litigation-multiplying conduct continues despite a warning to desist"). Vexatious conduct may be found even in the absence of subjective bad intent, Local 285 Serv. Employees Int'l, 64 F.3d at 737, and "to sue in bad faith means merely to sue on the basis of a frivolous claim, which is to say a claim that no reasonable person could suppose to have any merit." Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000).

barring a party from filing and processing frivolous and vexatious lawsuits may be appropriate."); accord Gordon v. U.S. Dep't of Justice, 558 F.2d 618 (1st Cir. 1977) (per curiam) (same); Pavilonis v. King, 626 F.2d 1075, 1078-79 (1st Cir. 1980) (same).

      Accordingly, it is hereby ORDERED that:

**If Plaintiff Amanda Ajuluchuku undertakes to file any additional papers in this Court, except those filings in currently pending actions or to effect an appeal from this order, she shall file a written petition seeking leave of Court to do so. The petition must contain a copy of this Order, together with the papers sought to be filed, and a certification under oath that there is a good-faith basis for their filing. The Clerk of Court shall accept the documents, mark them received, and forward them for action on the petition to a judge of this Court authorized to act on matters on the Miscellaneous Business Docket of the Court.**

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

(1)     The Order of Dismissal entered on April 27, 2005 remains in effect;

(2)     Plaintiff Amanda Ajuluchuku is enjoined from further filings in this Court subject to the parameters set forth in this Memorandum and Order, requiring leave of Court prior to any filing; and

(3)     A copy of this Order shall be distributed to the Clerk of Court and to the session of each District Judge.

      Plaintiff Amanda Ajuluchuku is specifically instructed that any failure to comply with these requirements may result in additional sanctions, including monetary fines.

SO ORDERED.

                                     /s/ Douglas P. Woodlock
DATED: April 29, 2005          DOUGLAS P. WOODLOCK
                                     UNITED STATES DISTRICT JUDGE